No. 26-60065

# In the United States Court of Appeals for the Fifth Circuit

GERRY MALLORY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,
PLAINTIFF – APPELLANT

v.

CITY OF HATTIESBURG; INTELLISAFE, INCORPORATED; ANNA RUSH; STEVEN ADAMSON; ELIZABETH PORTER; HARDY SIMS, CHIEF
DEFENDANTS – APPELLEES

On Appeal from the United States District Court
for the Southern District of Mississippi, Cause No.: 2:25-CV-10

## BRIEF OF APPELLANT GERRY MALLORY

Richard Joseph Lajaunie
State Bar No. 100035
rjlajaunie@djlawms.com
Ronald V. Johnson, IV
State Bar No. 105950
rvjohnson@djlawms.com
DEAKLE-JOHNSON LAW FIRM
P.O. Box 2072
Hattiesburg, MS 39403
(601) 544-0631
(601) 544-0666 (Facsimile)
*Counsel for Plaintiff-Appellant Gerry Mallary*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. **Plaintiff/Appellant:**

   Gerry Mallory

2. **Defendant/Appellees:**

   City of Hattiesburg, Mississippi; Steven Adamson; Elizabeth Porter; Anna Rush; Hardy Sims; and Intellisafe, Incorporated

3. **Counsel for Plaintiff/Appellant:**

   Richard J. Lajaunie, Ronald V. Johnson, IV/Deakle-Johnson Law Firm, PLLC, Hattiesburg, MS

4. **Counsel for Defendants/Appellees City of Hattiesburg, Mississippi, Anna Rush, Steven Adamson, Elizabeth Porter, and Hardy Sims:**

   L. Clark Hicks, Jr., R. Lane Dossett/ Hicks Law Firm, PLLC, Hattiesburg, MS

5. **Counsel for Defendant/Appellee Intellisafe, Incorporated:**

   Robert Wilkinson, Stephen McCauley/ Wilkinson, Williams, Bosio & Sessoms, PLLC, Pascagoula, MS

*s/Richard Joseph Lajaunie*
RICHARD J. LAJAUNIE
Attorney of record for Appellant Gerry Mallory

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Gerry Mallory ("Mallory") requests oral argument as he believes it could significantly benefit the Court regarding the application of the complex and specific factual issues in this matter and their relation to the constitutional protections afforded Mallory and others in similar situations. Mallory believes that oral argument could assist the Court regarding the nuances in the application of these facts to relevant law in determining the errors of law and fact committed by the United States District Court for the Southern District of Mississippi.

# TABLE OF CONTENTS

Certificate of Interested Persons ........ ii

Statement Regarding Oral Argument ........ iii

Table of Contents ........ iv

Table of Authorities ........ vi

Jurisdictional Statement ........ 1

Standard of Review ........ 2

Statement of the Issues ........ 4

Statement of the Case ........ 4

I. Course of Proceedings and Disposition in the Court Below. ........ 5

II. Statement of Relevant Facts. ........ 6

Summary of the Argument ........ 12

Argument ........ 14

I. Mississippi Statutes, Rules and City Ordinances. ........ 14

II. Whether Mallory has standing and has stated valid due process claims.... 20

A. The presumption of innocence. ........ 22

B. Procedural due process. ........ 26

C. Substantive due process ........ 28

III. Whether Mallory has stated a valid equal protection claim. ........ 31

IV. Whether Chief Sims and the City Prosecutors are protected by absolute or qualified immunity. ........ 35

Conclusion ....................................................................................................37

Certificate of Service ...........................................................................................39

Certificate of Compliance .....................................................................................40

# TABLE OF AUTHORITIES

## Cases

*Agomo v. Fenty*, 916 A.2d 181 (D.C. App. 2007). ....................26

*Allen v. Hays*, 65 F.4th 736 (5th Cir. 2023)....................3

*Balaban v. City of Cleveland*, No. 1:07-CV-1366, 2010 WL 481283 (N.D. Ohio Feb. 5, 2010). ....................26

*Betterman v. Montana*, 578 U.S. 437 (2016). .................... 23, 24

*Bevis v. City of New Orleans*, 686 F.3d 277 (5th Cir. 2012).................... 26, 27

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985). ....................31

*Cnty. of Sacrameto v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). ....................32

*Codd v. Velger*, 429 U.S. 624 (1977). ....................28

*Coffin v. U.S.*, 156 U.S. 432 (1895). ....................22

*Collins v. City of Harker Heights*, 503 U.S. 115 (1992). ....................29

*Daniels v. Williams*, 474 U.S. 327, 88 L. Ed. 2d 662 S. Ct. 662 (1986)....................29

*DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989)....29

*Doe v. Beaumont Indep. Sch. Dist.*, 615 F. Supp. 3d 471 (E.D. Tex. 2022). ....................2

*Ex Parte Young*, 209 U.S. 123 (1908)....................35

*Favre v. Sharpe*, 2024 U.S. App. LEXIS 23519 (5th Cir. 2024). ....................3

*Ga. Elec. Life Safety & Sys. Ass'n v. City of Sandy Springs* 965 F.3d 1270 (11th Cir. 2020). ....................26

*Hernandez v. Beto*, 443 F.2d 634 (5th Cir. 1971). ....................22

*Herrada v. City of Detroit*, 275 F.3d 553 (6th Cir. 2001). ....................26

*Herrera v. Collins*, 506 U.S. 390 (1993).....24

*Huff v. Edwards*, 241 So. 2d 654 (Miss. 1970).....25

*In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).....22

*Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997).....31, 33

*Jones v. Tyson Foods Inc.*, 971 F. Supp. 2d 632 (N.D. Miss. 2013).....2, 3

*K.P. v. LeBlanc*, 627 F.3d 115 (5th Cir. 2010).....36

*Kaley v. United States*, 571 U.S. 320 (2014).....24, 25

*King v. Baylor University*, 46 F.4th 344 (5th Cir. 2022).....3

*Kocurek v. Cuna Mut. Ins. Soc'y*, 459 F. App'x 371 (5th Cir. 2012).....2

*Lamb v. Ashford Place Apts., L.L.C.*, 914 F.3d 940 (5th Cir. 2019).....3, 4

*Lefebure v. D'Aquilla*, 15 F.4th 650 (5th Cir. 2021).....36

*Lindquist v. City of Pasadena*, 525 F.3d 383 (5th Cir. 2008).....32

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010).....2

*Loupe v. O'Bannon*, 824 F.3d 534 (5th Cir. 2016).....37

*Moore v. East Cleveland*, 431 U.S. 494 (1977).....29

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001).....35, 36

*Palko v. Connecticut*, 302 U.S. 319 (1937).....30

*Pioneer nat. Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Int'l Union Local 4-487*, 328 F. 3d 818 (5th Cir. 2003).....3

*Qutb v. Strass*, 11 F.3d 488 (5th Cir. 1993).....31

*Rector v. City and Cnty. Of Denver*, 348 F.3d 935 (10th Cir. 2003).....27

*Reno v. Flores*, 507 U.S. 292 (1993). ....................30

*Robertson v. Watson*, 560 U.S. 272 (2010). ....................19

*Ross v. Marshall*, 426 F.3d 745 (5th Cir. 2000). ....................4

*Snyder v. Massachusetts*, 291 U.S. 97 (1934). ....................29

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). ....................21

*Stubbs v. City of Center Pointe, Ala.*, 988 F. Supp. 2d 1270 (N.D. Ala. 2013). ......26

*Turner v. Oliver*, 2023 U.S. Dist. LEXIS 60520 (S.D. Miss. March 10, 2023). .....37

*U.S. v. Moreland*, 665 F.3d 137 (5th Cir. 2011). ....................22

*United States v. Hills*, 75 M.J. 350 (CAAF 2016). ....................22

*Von Moltke v. Gillies*, 332 U.S. 708 (1948). ....................28

*Wash. V. Glucksberg*, 521 U.S. 702 (1997). .................... 29, 30

*Watkins v. Allstate Prop. & Cas. Ins. Co.*, 90 F.4th 814 (5th Cir. 2024)...............2, 3

*Zinermon v. Burch*, 494 U.S. 113 (1990). ....................29

**Statutes**

28 U.S.C. § 1331. ....................1

28 U.S.C. § 1342(a)(3). ....................1

28 U.S.C. § 1343(a)(4). ....................1

28 U.S.C. § 1367(a). ....................1

28 U.S.C. § 2201. ....................1

28 U.S.C. § 2202. ....................1

29 U.S.C. § 1291. ....................2

42 U.S.C. § 1983 .......... 1, 2, 5

42 U.S.C. § 1988 .......... 1, 5

Miss. Code Ann. § 17-25-19(1)(a) .......... 14

Miss. Code Ann. § 21-13-19 .......... 17

Miss. Code Ann. § 63-3-201 .......... 17

Miss. Code Ann. § 63-3-209 .......... 17

Miss. Code Ann. § 63-9-11(1) .......... 18

Miss. Code Ann. § 63-9-21(3)(c) .......... 15, 20

**Ordinances**

Hattiesburg City Ordinance 1058, December 5, 1946 .......... 18

Hattiesburg City Ordinance 2721, May 2, 2000 .......... 18

Hattiesburg City Ordinance 890, January 7, 1937 .......... 18

Hattiesburg's Code of Ordinances, Sec. 25.21 .......... 18

**Rules**

Fed. R. App. P. 4(a)(4)(A)(iv) .......... 2

Fed. R. Civ. P. 12(b)(6) .......... passim

Fed. R. Civ. P. 57 .......... 1

Fed. R. Civ. P. 59(e) .......... 1, 3

Fed. R. Civ. P. 65 .......... 1

Miss. R. Crim. P. 1.4 .......... 15

Miss. R. Crim. P. 15.3 .......... 16

Miss. R. Crim. P. 2.1. ....................16

**Constitutional Provisions**

U.S. Const. amend. V.................... 1, 5, 22

U.S. Const. amend. VI .................... 1, 5, 25

U.S. Const. amend. XIV .................... 1, 5, 23, 30

## JURISDICTIONAL STATEMENT

Mallory filed his Complaint regarding constitutional violations which occurred as a result of a policy (hereinafter the "Policy") promulgated, enacted, and/or enforced, by, or on behalf of, the City of Hattiesburg, regarding traffic laws within school zones. Mallory's claims are based upon 42 U.S.C. § 1983, 42 U.S.C. § 1988, the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, as well as all corresponding sections of the Mississippi Constitution. As such, the District Court had subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331, 1342(a)(3) and 1343(a)(4); and supplemental jurisdiction of the state claims pursuant to 28 U.S.C. § 1367(a). Additionally, Mallory sought declaratory and injunctive relief, pursuant to Rule 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, to enjoin the Defendants-Appellees from continuing to enforce the unconstitutional policy and the frauds exacted upon the public.

On October 14, 2025, the United States District Court for the Southern District of Mississippi entered its Memorandum Opinion and Order dismissing all of Mallory's federal claims, and declining to exercise supplemental jurisdiction over the state law claims. As such, the order disposed of all of Mallory's claims. Pursuant to Fed. R. Civ. Proc. 59(e), Mallory filed a Motion to Alter or Amend Judgment on

October 16, 2025, which was later amended on November 13, 2025. On January 29, 2026, the District Court entered its Order Denying Mallory's motion.

Pursuant to Federal Rule of Appellate Procedure, Rule 4(a)(4)(A)(iv), Mallory timely filed his Notice of Appeal on February 10, 2026. Therefore, this Court has jurisdiction over this appeal pursuant to 29 U.S.C. § 1291.

## STANDARD OF REVIEW

The Fifth Circuit Court of Appeals reviews *de novo* a dismissal of an action pursuant to Fed. R. Civ. Proc. 12(b)(6). *Watkins v. Allstate Prop. & Cas. Ins. Co.*, 90 F.4th 814, 817 (5th Cir. 2024).

"Motions to dismiss pursuant to Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" *Jones v. Tyson Foods Inc.*, 971 F. Supp. 2d 632, 637 (N.D. Miss. 2013) (quoting *Kocurek v. Cuna Mut. Ins. Soc'y*, 459 F. App'x 371, 373 (5th Cir. 2012)). In determining whether a case should be dismissed, "[t]he ultimate question […] is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Id.* (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

"At the 12(b)(6) stage, a plaintiff's burden [in a § 1983 claim] to allege an unconstitutional policy, practice or custom is not onerous." *Doe v. Beaumont Indep. Sch. Dist.*, 615 F. Supp. 3d 471, 491 (E.D. Tex. 2022). In order to survive a motion

to dismiss based on Rule 12(b)(6), the plaintiff's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Favre v. Sharpe*, 2024 U.S. App. LEXIS 23519, *6 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)). Such a claim permits the court to make a reasonable inference regarding the liability of the defendant based on the alleged conduct in the complaint. *Id.* While the court will assume all well-pleaded facts as true, and in the light most favorable to the plaintiff, it will not "'accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Watkins*, 90 F.4th at 817 (quoting *King v. Baylor University*, 46 F.4th 344, 356 (5th Cir. 2022)). Furthermore, "the court must not evaluate the likelihood of the claim's success, but instead ascertain whether the plaintiff has stated a legally cognizable claim that is plausible." *Jones*, 971 F. Supp. 2d at 638.

With regard to the review of a decision on a motion to alter or amend judgment pursuant to Rule 59(e), the appellate courts generally review for an abuse of discretion by the lower court. *Lamb v. Ashford Place Apts., L.L.C.*, 914 F.3d 940, 943 (5th Cir. 2019). However, "[t]o the extent that a ruling was a reconsideration of a question of law, … the standard of review is *de novo*." *Id.* (quoting, *Pioneer nat. Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Int'l Union Local 4-487*, 328 F. 3d 818, 820 (5th Cir. 2003)). "A motion to alter or amend judgement must clearly establish either a manifest error of law or fact or must present newly

discovered evidence." *Id.* (quoting *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2000)). Because a motion to dismiss pursuant to Rule 12(b)(6) is decided as a matter of law, the review of the denial of the motion to alter or amend judgment should be reviewed *de novo*.

For the reasons stated above, this Court should review all issues in this matter on a *de novo* basis.

## STATEMENT OF THE ISSUES

I. Whether Mallory has standing and has stated valid due process claims.

II. Whether Mallory has stated a valid equal protection claim.

III. Whether Chief Sims and the City Prosecutors are protected by absolute or qualified immunity.

## STATEMENT OF THE CASE

This matter involves a Policy promulgated, enacted, and/or enforced, by, or on behalf of, the City of Hattiesburg, which seeks to enforce certain traffic laws within school zones. However, the method and practice by which the Policy is enforced violates the constitutional rights of Mallory, and others, and is based on fraud and deceit. The Defendants-Appellees in this matter include the City of Hattiesburg (hereinafter the "City"); its prosecutors Anna Rush, Steven Adamson, and Elizabeth Porter (hereinafter the "City Prosecutors"); its Chief of Police Hardy Sims (hereinafter "Chief Sims"); and a non-governmental, non-judicial, private, for-

profit company Intellisafe, Inc. (hereinafter "Intellisafe"). The City, City Prosecutors, and Chief Sims will be, at times, collectively referred to as the "City Defendants."

## I. Course of Proceedings and Disposition in the Court Below.

On January 27, 2025, Mallory filed his Complaint pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, as well as all corresponding sections of the Mississippi Constitution. ROA.8-62. Again, Mallory's Complaint was based upon a Policy promulgated, enacted, and/or enforced, by, or on behalf of, the City of Hattiesburg, to enforce certain traffic laws within school zones. *Id.* On March 26, 2025, Intellisafe filed its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ROA.87-109. The City Defendants also filed a Motion to Dismiss on April 9, 2025. ROA.112-131.

District Court Judge Keith Starrett entered his Memorandum Opinion and Order (hereinafter "Judge Starrett's Order") on October 14, 2025. ROA.230-257. Shortly after the Judge Starrett's Order, on October 16, 2025, Mallory filed his Motion and Memorandum to Alter or Amend Judgment, which was later amended on November 13, 2025, arguing the District Court's ruling was flawed and amounted

to a clear error of law resulting in manifest injustice for Mallory and others.[1] ROA.278-302.

Incidentally, Judge Starrett assumed inactive status as of October 31, 2025, and on November 5, 2025, this matter was reassigned to Judge Louis Guirola, Jr. ROA.277. District Court Judge Louis Guirola, Jr. entered his Order Denying [35] Amended motion to Alter or Amend Judgment on January 29, 2026. ROA.339-341.

It is from these two Orders that fully disposed of all claims Mallory appeals, having filed his Notice of Appeal on February 20, 2026. ROA.342-343.

## II. Statement of Relevant Facts.

In March of 2024, without any authority to do so, the City, by and through its mayor and city council, entered into a contract with Intellisafe, a non-governmental, non-judicial, private, for-profit company, and thereby established, promulgated, and/or enacted a Policy by which Intellisafe would provide its services to aid in the enforcement of its municipal traffic laws in school zones, and specifically with the criminal misdemeanor violation of speeding. ROA.45-52. Pursuant to the contract, Intellisafe is responsible for providing the City, and its police department, with services and equipment, including the specialized, automated cameras used by City

[1] Mallory's original motion and memorandum was filed in one consolidated filing. The District Court struck the original filing and allowed Mallary to file his Amended Motion to Alter or Amend Judgment, and a separate memorandum brief in support thereof.

police officers to generate citations. ROA.11-12. Importantly, Intellisafe is also responsible for processing the citations. *Id.*

In accordance with the Policy, Hattiesburg police officers use handheld radar detectors with integrated cameras to photograph, and/or video, the license plate of vehicles that are speeding in certain City school zones, without conducting traffic stops and without ever identifying the drivers of the vehicle. *Id.* The photograph, or video captured by the officer is then reviewed and approved by someone ***other than*** the officer who used the handheld device to capture the photograph or video. ROA.61. Then, without ever knowing who was actually driving the vehicle, the officer identifies the owner using vehicle registration information, and forwards that information to Intellisafe for processing. ROA.11-12.

Intellisafe, vested with the information provided by the City's police force, prints an image of the citation along with a photo of the vehicle's license plate, and "transposes" that image to the back side of what appears to average person, to be an official form letter from the City of Hattiesburg, issued under color of state law. ROA.57-58. Intellisafe then mails the citation to the owner of the vehicle, allegedly charging the owner of the vehicle with the criminal misdemeanor of speeding, **and not the driver** who was actually operating the vehicle at the time of the violation.[2]

---

[2] While not specifically mentioned, Mallory is uncertain as to whether he was driving at the time of the violation. However, for the reasons discussed herein, who was driving is not a determining factor.

ROA.57-58. The image of the citation created by Intellisafe contains language which gives the impression the citation is a sworn affidavit, stating: "IN THE COURT DESIGNATED BELOW, THE AFFIANT HEREIN, BEING DULY SWORN UPON OATH DOES DEPOSE AND SAY AT THE FOLLOWING LOCATIONS, TIME AND DATE: […] THAT THE ABOVE NAMED DEFENDANT WHILE OPERATING THE AFOREMENTIONED MOTOR VEHICLE, DID WILLFULLY AND UNLAWFULLY COMMIT THE OFFENSE OF [SPEEDING]", yet, the citation is neither physically nor electronically signed as required by state statute, and it is not filed with the municipal court.[3] ROA.57.

This notice provides the owner of the vehicle with three options in which to address the citation: (1) participate in IntelliSafe's diversion program; (2) contest the citation by scheduling a date to appear in court; and (3) pay the citation in full. ROA.57-58. Notably, appearing on the "court date" shown on the citation is not listed as an option. *Id.* Regardless of the omission of this "option," those who do actually appear on the "court date" listed in the citation, do not appear before the municipal court, but rather a private individual acting as a representative of Intellisafe who is there to conduct their "arraignment." ROA.24.

[3] Intellisafe goes so far as to admit in its Memorandum Brief in Support of Defendants' F.R.C.P. 12(b)(6) Motion to dismiss or, in the Alternative, Motion to Stay, that the citations are "***not sworn to or filed with the court***." ROA.91, paragraph 4.

The citation sent by Intellisafe informs the owner of the amount of the fine ($230.00) and an arbitrary "due date," by which to pay the fine, which is several days, or sometimes more than a week, ***before*** the identified "court date" listed on the citation. ROA.57-58. It also states that "[f]ailure to deal with this citation may result in this being forwarded to a collections company, which could result in additional penalties."[4] *Id.*

Information contained within the citation directs the owner to a website and Intellisafe's FAQ's (Frequently Asked Questions) if the owner has any questions. *Id.* Though, the FAQ's provided by Intellisafe make several false statements, including but not limited to, that the City amended its ordinances to provide for this process; that the owner is responsible for the citation even if they were not driving; that, if an extension is requested, the owner will lose his right to a hearing before a judge; and, that if not paid by Intellisafe's arbitrary due date, a late fee of $30.00 will be added to the citation, and the citation will be referred to collections resulting in more additional fees. ROA.53-55.[5]

It is clear that the City and Intellisafe created the Policy at issue in this matter. Chief Sims, as head of the Hattiesburg Police Department (hereinafter "HPD"),

---

[4] There is no indication that the citation will be forwarded to the municipal court if one fails to contact Intellisafe, or appear on the identified court date. *Id.* The impression given is that the citation, fine and late fee, will be forwarded to a collections agency, all without having be found guilty by a court. *Id.*

[5] Intellisafe also informs purported violators that if they do not pay by the arbitrary due date, they would lose their right to a hearing. ROA.26.

created an internal policy by which the HPD would enforce the Policy through its officers' utilization of the automatic camera system, and Intellisafe used the information provided to it by HPD to generate the citations in accordance with the Policy. The City Prosecutors also play a part in enforcing the Policy in the municipal court, via their wholesale dismissal of the citations and their complete inability to prove who was driving the vehicle at the time of the violation. In any event, Chief Sims, and the City Prosecutors, have a duty to protect the rights of those within the City's boundaries when they know, or should know, that the citations are not being issued in accordance with state law.

On September 14, 2024, (a Saturday), Mallory received a citation in the mail from Intellisafe regarding an alleged violation on August 13, 2024, at 3:04 p.m., when his Chrysler Pacifica was captured by photo/video speeding through a school zone, though Mallory is uncertain as to who was driving his vehicle at that time. ROA.57-58. Pursuant to the Policy, the citation Mallory received identified a $230.00 fine and a "due date" of September 15, 2024, (a Sunday) being the very next day after Mallory received the citation. *Id.* Despite the due date being September 15, 2024, the hearing date shown on the citation was not due to take place until eight (8) day later, or on September 23, 2024.[6] *Id.*

[6] Incidentally, when one calls the number listed on the citation, one hears a message from the call center for Hattiesburg which is only open from Monday through Friday, 9:00 a.m. to 6:00 p.m. Furthermore, when one goes to the stated website, there is nowhere to schedule a hearing or indicate one would like to contest the citation, except for sending an email which would not be

Nevertheless, Mallory read, and relied upon, the FAQ's located on the website which informed him that he was responsible for the citation as the owner of the vehicle even if he was not driving, and which further represented that if Mallory requested an extension to address the citation, he would lose his right to a hearing. ROA.53-55. Not being able to contact anyone to state his intention to contest the citation prior to the "due date," faced with the threat of losing his right to a hearing if the citation was paid within 24 hours, and being accessed a late fee of $30.00 and possibly being referred to collections, Mallory fell prey to the fraudulent scheme established by the Policy. ROA.20 and ROA.60. Indeed, Mallory believed his only option was to pay the citation, or else. *Id.* As such, on September 15, 2024, the arbitrary "due date," Mallory logged into the online portal and paid the fine, in full, all without ever being heard before a judge, and all deceptively based upon an ***unsworn, unfiled***, "affidavit" that his vehicle was speeding in a school zone. *Id*. To this day, citizens across the State of Mississippi, and elsewhere, are still being subjected to the fraudulent Policy and resulting scheme which deprives them of their constitutional rights, under the guise of protecting children in schools zones.

---

read until Monday, in Plaintiff's case this would have been after the "Due Date" and he would have been assessed a late fee and lost his right to a hearing anyway.

## SUMMARY OF THE ARGUMENT

Without any authority to do so, the City has contracted with Intellisafe, a non-governmental, non-judicial, private, for-profit company, to enforce its traffic laws, specifically the criminal offense of speeding in certain school zones. In doing so, the City, again without any authority, has outsourced its criminal justice system to Intellisafe, which has no authority to operate as a judicial system and cannot accept guilty pleas on behalf of the City, especially when the citations are ***unsworn, and unfiled***. Stated differently, no valid charge against Mallory ever existed.[7]

By requiring purported violators to pay nonexistent or invalid fines, levying unjust "late" fees and threatening other penalties all ***before*** the date of the hearing listed in the citation, (though not even a real court date), the City Defendants and Intellisafe are deeming the purported violators guilty, striping them of their constitutional rights and violating the fundamental right of the presumption of innocence. Additionally, the purported violators are being treated differently than other drivers in the City where proper traffic stops are performed and the drivers of the vehicles is properly identified.

Judge Starrett erred in dismissing Mallory's claims. The crux of Judge Starrett's ruling is based on the fact that Mallory chose to pay the citation, and

[7] While it is true that no valid charge actually existed, Intellisafe was acting on behalf of the City, presumably under color of law, and misrepresented the citation to Mallory, and others, as a valid charge. Else, how could one owe a fine?

therefore pled guilty, so, according to Judge Starrett, there was no constitutional violation of Mallory's rights, and he had no standing to sue. However, there are several serious issues with Judge Starrett's position, the most important of which is: 1) there was never a valid charge against Mallory; 2) a private entity cannot accept guilty pleas, especially in the absence of a valid charge; 3) because of when Mallory received the citation and in accordance within the design of the scheme, he was unable to inform anyone of his intent to contest the citation before the arbitrary "due date"; and, 4) Mallory was falsely informed that he would lose his right to a hearing if he requested an extension, therefore his "choice" was not voluntary. In any event, Judge Starrett dismissed Mallory's other constitutional claims under the premise Mallory lacked standing for having paid the citation.

Judge Starrett also stated Mallory failed to state a claim for a violation of equal protection. Yet, Judge Starrett focused only on whether Mallory was a member of a protected class, which is not what Mallory claimed. Instead, Mallory claimed a deprivations of a fundamental right, i.e. - the presumption of innocence, which the District Court recognized would require strict scrutiny. But Judge Starrett had already wrongfully dismissed this idea because Mallory had paid the fine. As a result, Judge Starrett erroneously applied the incorrect standard and found the Policy met the rational basis test.

Lastly, Judge Starrett erroneously found the City Prosecutors enjoyed absolute immunity because it was in their power to dismiss claims they could not prove, and Mallory failed to state a constitutional claim. But this reasoning also misses the mark. The issue is the City Prosecutors' failure to protect Mallory and others from constitutional violations, which the District Court erred in dismissing.

With regard to Judge Guirola's ruling on Mallory's Motion to Alter or Amend Judgment, Judge Guirola made his ruling on the basis that the presumption of innocence did not apply because there was no jury trial. However, case law supports the notion that the presumption of innocence applies long before a jury trial even begins. For this reason, Judge Guirola erred in denying Mallory's motion.

## ARGUMENT

### I. Mississippi Statutes, Rules and City Ordinances.

Mississippi law prohibits the use of automated recording equipment for the purpose of traffic enforcement. Specifically, Miss. Code Ann. § 17-25-19(1)(a) reads, in pertinent part:

> **Miss. Code Ann. § 17-25-19(1)(a). Prohibition against ordinance authorizing use of automated recording equipment to enforce compliance with or impose penalties for violation of traffic laws.**
>
> Neither the board of supervisors of any county nor the governing authority of any municipality shall adopt, enact or enforce any ordinance ***authorizing the use of automated recording equipment or system*** to enforce compliance with traffic signals, ***traffic speeds***, or other traffic laws, rules or regulations on any public street, road or

highway within this state ***or to impose or collect any civil or criminal fine, fee or penalty for any such violation***. (emphasis added)

Additionally, pursuant to a state statute it is a requirement for a citation to be sworn to and filed with a court in order for it to constitute a complaint upon which prosecution may be had. Stated another way, without being filed, no formal charge against a defendant has been made, or may be prosecuted. *See* Miss. Code Ann. § 63-9-21(3)(c), which states:

**Miss. Code Ann. § 63-9-21(3)(c). Uniform Traffic Ticket Law.**

(c) Every traffic ticket shall show, among other necessary information, the name of the issuing officer, the name of the court in which the cause is to be heard, and the date and time the person is to appear to answer the charge. ***The ticket shall include information that will constitute a complaint charging the offense for which the ticket was issued, and when duly sworn to and filed with a court of competent jurisdiction, prosecution may proceed thereunder.*** (emphasis added)

Even the lowest courts require sworn statements to file a charge against another, without which, there is no accountability upon the one making an accusation falsely and without sufficient proof. Not only does Mississippi statute require a charge to be made under oath, filed with a court, and for the court to conduct an arraignment, but so too do the Mississippi Rules of Criminal Procedure:

**Miss. R. Crim. P. 1.4. Definitions.**

**(a)** "Bill of information" means a written statement charging the defendant(s) named therein with the commission of an indictable offense, ***made on oath, signed, and presented to the court*** by the district attorney, without action by the grand jury. (emphasis added)

**(c)** "Charge" means a charging affidavit, indictment, or bill of information.

**(d)** "Charging affidavit" means a written statement ***made upon oath*** before a judge, clerk of the court, or other officer authorized by law to administer oaths, setting forth essential underlying facts and circumstances constituting an offense and alleging that the defendant committed the offense. (emphasis added)

**(e)** "Indictment" is a written statement charging the defendant(s) named therein with the commission of an indictable offense, presented to the court by a grand jury, endorsed "A True Bill," and signed by the foreperson. It includes a true bill from the grand jury or a bill of information in lieu thereof.

**<u>Miss. R. Crim. P. 2.1.</u> Commencement of criminal proceedings.**

**(a) Commencement. —** All criminal proceedings shall be commenced either by charging affidavit, indictment, or bill of information.

**(b) Docketing the case. —**

> **(1) Charging affidavit. —** Anyone bringing a criminal charge in municipal court or justice court ***shall lodge a charging affidavit with the judge or clerk of the court***. The clerk of the court shall record all charging affidavits on the docket. (emphasis added)

**<u>Miss. R. Crim. P. 15.3.</u> Entry of plea of guilty or Nolo Contendere.**

**(c) Voluntariness. —** Before the ***trial court*** may accept a plea of guilty, ***the court*** must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea. ***A plea is not voluntary if induced by fear, violence, deception, or improper inducements.*** A showing that the plea of guilty was voluntarily and intelligently made must appear in the record. (emphasis added)

Lastly, traffic violations, specifically including speeding, are criminal misdemeanors pursuant to Mississippi statutes, which are also applicable to municipalities, and even the ordinances identified in this case. Consider the following:

> **Miss. Code Ann. § 21-13-19. Misdemeanors under state penal laws as criminal offenses against municipalities.**
>
> ***All offenses under the penal laws of this state which are misdemeanors, together with the penalty provided for violation thereof, are hereby made, without further action of the municipal authorities, criminal offenses against the municipality in whose corporate limits the offenses may have been committed to the same effect as though such offenses were made offenses against the municipality by separate ordinance in each case.*** However, for such misdemeanor, any penalty of incarceration is hereby limited to no more than six (6) months in jail, and any fine is hereby limited to a maximum of One Thousand Dollars ($1,000.00) for each such violation in any case tried without a jury. Judgments for fines, costs, forfeitures and other penalties imposed by municipal courts may be enrolled by filing a certified copy of the record with the clerk of any circuit court and execution may be had thereon as provided by law for other judgments. (emphasis added)
>
> **Miss. Code Ann. § 63-3-201. Offenses and penalties generally.**
>
> It is unlawful and, unless otherwise declared in this title with respect to particular offenses, it is a ***misdemeanor*** for any person to do any act forbidden by this chapter or to fail to perform any act required in this chapter. (emphasis added)
>
> **Miss. Code Ann. § 63-3-209. Uniformity of application of chapter throughout state; local traffic regulation generally.**
>
> The provisions of this chapter shall be applicable and uniform throughout this state ***and in all political subdivisions and municipalities therein***, and no local authority shall enact or enforce any rule or regulation in conflict with the provisions of this chapter unless expressly authorized herein. Local authorities may, however, adopt

additional traffic regulations which are not in conflict with the provisions of this chapter. (emphasis added)

**Miss. Code Ann. § 63-9-11(1). Penalties for violations of Chapter 3, 5 or 7; exemption.**

It is a ***misdemeanor*** for any person to violate any of the provisions of Chapter 3, 5 or 7 of this title, unless such violation is by such chapters or other law of this state declared to be a felony. (emphasis added) (Chapter 3 of Title 63 is "Traffic Regulations and Rules of the Road.")

**Hattiesburg City Ordinance 890, January 7, 1937.**

Any person found guilty of violating any of the provisions of this Ordinance, or of any Section thereof, shall be fined not to exceed One Hundred Dollars (100.00), or imprisoned for thirty (30) days, or both.

**Hattiesburg City Ordinance 1058, December 5, 1946.**

Any person found guilty of violating any of the provisions of this Ordinance shall be fined not to exceed $100.00 or sentenced to serve not to exceed thirty (30) days in the City Jail, or subjected to both such fine and imprisonment.

**Hattiesburg City Ordinance 2721, May 2, 2000.**

It shall be unlawful for any person to violate any provision of this article. Such violation shall be a ***misdemeanor*** and shall be punishable by a fine of not more than one hundred dollars ($100.00). If a violation is continuing, each days violation shall be deemed a separate offense. (emphasis added)

**Hattiesburg's Code of Ordinances**

**Sec. 25.21. Penalties/Violations.**

Any person, firm, or corporation violating the provisions of this Ordinance shall be guilty of a ***misdemeanor***. The fine for a violation of this Ordinance shall be not less than two hundred fifty dollars ($250.00). Increased ***criminal fines*** may be imposed for repeated

> violations of this Ordinance by a person, firm, or corporation. A "repeat violation" is a second or subsequent violation committed by a person, firm, or corporation within six months of a prior violation and for which the person, firm, or corporation admits responsibility or is determined to be responsible. The sanction for a violation of this Ordinance which is a first repeat violation shall be a fine of not less than five hundred dollars ($500.00), plus assessments and/or 30 days in jail. The fine for a violation of this Ordinance which is a second or subsequent repeat violation shall be a fine of not less than one thousand dollars ($1,000.00), plus assessments and/or 60 days in jail. Citations for violation of this Ordinance shall be issued by any law enforcement officer of the City of Hattiesburg. (emphasis added)

Indeed, as Chief Justice Roberts stated, "[o]ur entire criminal justice system is premised on the notion that a criminal prosecution pits the government against the governed, not one private citizen against another." *Robertson v. Watson*, 560 U.S. 272, 278 (2010) (dissenting opinion).

Despite all of this, the City, without authority to do so, has outsourced its criminal justice system to Intellisafe, a non-governmental, non-judicial, private, for-profit company, to enforce its traffic laws, specifically the criminal offense of speeding in certain school zones by promulgating, enacting and/or enforcing a Policy that violates the rights of citizens. As a private entity, Intellisafe has no authority to conduct arraignments or accept guilty pleas, yet pursuant to the Policy, Intellisafe has stepped into the shoes of judge and jury. The City Defendants, along with Intellisafe, are attempting to transform criminal misdemeanors into civil penalties when enforcing speeding violations in school zones.

Furthermore, those who receive citations pursuant to the Policy are treated differently than others in the City, and are deemed guilty simply by virtue of being listed as the vehicle owner, though they are never properly identified as the ***driver*** at the time of the violation. On the other hand, those drivers outside of school zones are afforded proper traffic stops which result in the proper identification of the drivers violating the traffic laws and those citations are properly logged with a court of competent jurisdiction.[8] None of this occurs under the Policy. Additionally, because the citations issued pursuant to the Policy are unsworn, and unfiled, they are invalid and nonexistent from their inception. Notwithstanding the fact that these citations are invalid, a purported violator is nevertheless required to pay a $230.00 fine by an arbitrary "due date," which is prior to the identified court date on the citation, and is threatened with late fees, collections, loss of a hearing, and other potential penalties if not paid by the arbitrary "due date." All of these imminent threats are used by Intellisafe to coerce and extort payment of the $230.00 fine. As such, the purported violator is deemed guilty in violation of the presumption of innocence.

For these reasons, Mallory, like other purported violators, was deprived of his constitutional rights of equal protection, due process, and right to confront witnesses.

## II. Whether Mallory has standing and has stated valid due process claims.

[8] Miss. Code Ann. § 63-9-21(3)(c).

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In order to prove standing, the Plaintiff must prove that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[9] *Id.*

In order to establish an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339. For an injury to be particularized, a plaintiff must show that the injury affected him or her in a personal and individual way. *Id.*. The injury must also be concrete, meaning that it must be real and actually exist, not in the abstract. *Id.* at 340. "'Concrete' is not, however, necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, [the U.S. Supreme Court has] confirmed in many […] previous cases that intangible injuries can nevertheless be concrete." *Id.*

Here, there can be no doubt Mallory has suffered an injury in fact, first by being treated differently than others who are stopped outside of school zones; second, by being presumed guilty before a valid charge was even initiated against

[9] The third element of standing is not in dispute.

him; and third, because he was defrauded out of $230.00 pursuant to the illegal and unconstitutional Policy.[10] Further, Mallory's injury is certainly traceable to the Policy at issue in this matter, and as stated, it will be redressed by a favorable judicial decision.

**A. The presumption of innocence.**

There can be no doubt that the presumption of innocence is a fundamental right. See *Hernandez v. Beto*, 443 F.2d 634, 636-37 (5th Cir. 1971) (wherein the court found "trying Hernandez in his prison clothing infringed a fundamental right – the presumption of innocence."). See also, *Coffin v. U.S.*, 156 U.S. 432, 453-454 (1895) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law. It is stated as unquestioned in the text-books, and has been referred to as a matter of course in the decisions of this court and in the courts of the several States."); and *United States v. Hills*, 75 M.J. 350, 356 (CAAF 2016) (It is well-settled that, "[a] foundational tenet of the Due Process clause, U.S. Const. amend. V., is that an accused is presumed innocent until proven guilty.") (citing, *In re Winship*, 397 U.S. 358, 363, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); and *U.S. v. Moreland*, 665 F.3d 137, 148 (5th Cir. 2011) ("[T]he Due

[10] Judge Starrett took notice that Intellisafe did not dispute the payment of $230.00 as being a sufficient injury, and found, with regard to the payment, Mallory "alleged a constitutionally cognizable injury in-fact for purposes of Article III standing." ROA.249.

Process Clause of the Fourteenth Amendment, which forbids conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged.' This requirement 'provides concrete substance for the presumption of innocence – that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law." (internal cites and quotations omitted)).

In his order denying Mallory's motion to alter or amend, Judge Guirola seems to base his decision on the concept that the presumption of innocence does not apply to Mallory's claims because "the presumption of innocence arises in the context of a jury trial." ROA.340. However, it is important to note that this fundamental right is not applicable ***only*** in the instance of a jury trial, and in fact, is applicable from the moment one is formally accused, by and through several rights that are implicated long before trial begins. Consider the following cases:

*Betterman v. Montana*, 578 U.S. 437 (2016).

The U.S. Supreme Court stated the constitutional right to a speedy trial attaches at the ***beginning*** of the second phase of a criminal proceeding, that is "***when a defendant is arrested or formally accused.***" *Id.* at 440. (emphasis added). It further stated "[t]he Speedy Trial Clause implements [the ***presumption of innocence***] by "prevent[ing] undue and oppressive incarceration prior to trial…."

*Id.* at 442 (emphasis added). As such, by and through the Speedy Trial Clause, the presumption of innocence begins when one is ***accused***.

*Herrera v. Collins*, 506 U.S. 390 (1993).

This case involved a *habeas corpus* petition based upon newly received information and evidence of the petitioner's innocence. Although the petition was properly dismissed, in discussing the issues regarding the petitioner's innocence, the Supreme Court provided that, "[a] person ***when first charged with a crime is entitled to a presumption of innocence***, and may insist that his guilt be established beyond a reasonable doubt." *Id.* at 398 (emphasis added). The Court also recognized several other constitutional provisions in place to prevent against the risk of convicting an innocent person charged with a crime, referencing: the right to confront adverse witnesses; the right to compulsory process; the right to effective assistance of counsel; the right to a jury trial; the right to assistance of counsel; the right to a fair trial; that the prosecution must prove guilt beyond a reasonable doubt; and that the prosecution must disclose exculpatory evidence. *Id.* at 398-399 (internal citations omitted). Indeed "[a]ll of these constitutional safeguards, of course, make it more difficult for the State to rebut and finally overturn the ***presumption of innocence*** which attaches to ***every criminal defendant***." *Id.* at 399 (emphasis added). Many of these rights involve actions long before trial begins.

*Kaley v. United States*, 571 U.S. 320 (2014).

In discussing the right to counsel pursuant to the Sixth Amendments, the U.S. Supreme Court noted: "[e]ven ***prior to conviction (or trial)–when the presumption of innocence still applies***…." *Id.* at 327 (internal quotes and citations omitted) (emphasis added). The Court further noted, "defendants [ ] have a vital interest at stake: the constitutional right to retain counsel of their own choosing." *Id.* at 336. It was later stated in the dissent that the "right to vindicate [the] ***presumption*** [of innocence] by choosing the advocate they believe will best defend them is, as explained, ***at the very core of the Sixth Amendment***. *Id.* at 350-351 (internal quotes and citations omitted) (emphasis added). This choice occurs long before trial begins.

*Huff v. Edwards*, 241 So. 2d 654 (Miss. 1970).

In this case, the Mississippi Supreme Court discussed the legality of detention where someone was being held before an indictment was issued, stating "[i]n such instances the burden of proof is upon the State, since there is a ***presumption of innocence*** and no indictment creating a prima facie case of valid detention." *Id.* at 656 (emphasis added).

The foregoing cases clearly demonstrate that the constitutional right to the presumption of innocence applies long before trial begins. In fact, the presumption applies to every criminal defendant from the point of an arrest, indictment, or being charged with a criminal offense, until the end of trial. Mallory, just as all other purported violators, received a citation in the mail charging him with a misdemeanor

crime and he was cloaked with the presumption of innocence from the moment he received the citation. Mallory's fundamental right was violated by the enforcement of the unconstitutional Policy the moment the citation was placed in the mail.

For these reasons, Judge Guirola erred in denying Mallory's Motion to Alter or Amend Judgment.

**B. Procedural due process.**

With regard to procedural due process, the City Defendants, Intellisafe, and even Judge Starrett below, rely upon case law from other states and other Circuits that is inapplicable to the case at bar. For example, many of those states, and Circuits, have laws which specifically identify speeding as a civil infraction resulting in civil penalties. *See, Stubbs v. City of Center Pointe, Ala.*, 988 F. Supp. 2d 1270 (N.D. Ala. 2013), *Agomo v. Fenty*, 916 A.2d 181 (D.C. App. 2007), *Balaban v. City of Cleveland*, No. 1:07-CV-1366, 2010 WL 481283 (N.D. Ohio Feb. 5, 2010), *Bevis v. City of New Orleans*, 686 F.3d 277 (5th Cir. 2012), *Ga. Elec. Life Safety & Sys. Ass'n v. City of Sandy Springs* 965 F.3d 1270 (11th Cir. 2020), and *Herrada v. City of Detroit*, 275 F.3d 553 (6th Cir. 2001). Though, as established herein, speeding in Mississippi is a criminal misdemeanor. Additionally, the statutes in those states actually provide detailed written procedures which outline the ways and means by which the enforcement of relevant law can be carried out without violating constitutional rights. Here, there are no written procedures at all. Consider the

ordinance discussed in *Bevis* allows for a new hearing if the penalty was not paid in a timely manner; and, among other things, set forth a method of appeal for aggrieved individuals. There are no such written procedures in regards to the subject Policy.

Furthermore, there was no allegation in those cases that the fines issued were based upon nonexistent charges, that is, the charges in those matters were properly logged pursuant to state law. That is simply not the case here.[11] Despite its valid appearance, the fraudulent charge against Mallory was never lawful, because it had not been sworn to or filed with a court of competent jurisdiction.[12] In fact, the City Defendants, Intellisafe, and even Judge Starrett below discussed how "the Constitution does not protect procedure for procedure's sake[,]"[13] but it is axiomatic that the ***proper*** procedure must first ***begin*** before one can actually take advantage of it. Let's not forget the timing at issue here. That is Mallory received the citation on a Saturday and the "fine" was due the next day, on a Sunday. The Hattiesburg call center is only open Monday through Friday, 9:00 a.m. to 6:00 p.m. and an email would not have been read until the following Monday, all of which would have been after the arbitrary "due date" listed in the citation. Furthermore, based upon the

---

[11] The fact that this Court makes no distinction between a valid, sworn to and filed criminal misdemeanor charge, and a non-existent charge, such as we have in the case at bar, is incredulous. ROA.249.

[12] Intellisafe admits the citations are "***not sworn to or filed with the court***." ROA.91, paragraph 4. *See also,* Miss. Code Ann. § 63-9-21(3)(c), requiring citations to be filed.

[13] *Rector v. City and Cnty. of Denver*, 348 F.3d 935, 943 (10th Cir. 2003). *Rector* is also distinguishable as there was no allegation that Rector would lose his right to a hearing if not paid on time.

representations by Intellisafe, Mallory was of the belief that if the citation was not paid by the "due date," he would lose his right to a hearing, be assessed a penalty, and/or late fee, and the citation could potentially go to collections.

While Judge Starrett took the position Mallory pled guilty under the fraudulent circumstances described in the Complaint, and herein, it is important to note:

> ***A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession***; it is itself a conviction. . . . Out of just consideration for persons accused of crime, courts are careful that ***a plea of guilty shall not be accepted unless made voluntarily*** after proper advice and with full understanding of the consequences."

*Von Moltke v. Gillies*, 332 U.S. 708, 719 (1948) (emphasis added). Mallory's payment of the citation is, ***at best***, a mere admission and an extra-judicial confession, but certainly not a ***voluntary*** plea of guilt.

The insinuated procedure pursuant to the Policy does not exist in any Mississippi statute or rule of procedure, the charge did not exist, and Mallory had already been deemed guilty before any valid charge was filed with a court of competent jurisdiction and without a reasonable opportunity to contest the citation. Contrary to *Codd*, Mallory does, in fact, contest "the legitimacy of the underlying deprivation." *Codd v. Velger*, 429 U.S. 624 (1977).

### C. **Substantive due process.**

The "substantive" component of the due process clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986)); *see also Wash. V. Glucksberg*, 521 U.S. 702, 720 (1997) ("The Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests."). Additionally, the Due Process Clause of the Fourteenth Amendment was intended to prevent government "from abusing [its] power, ***or employing it as an instrument of oppression***." *Collins*, 503 U.S. at 126 (quoting *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989)) (emphasis added). "[C]onstitutional violation[s] actionable under § 1983 [are] complete when the wrongful action is taken." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

In *Glucksberg*, the U.S. Supreme Court discussed the considerations to be made when analyzing substantive due process claims and underlying fundamental rights, being two primary features:

> **First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition**," [*Moore v. East Cleveland*, 431 U.S. 494, 503 (1977)] (plurality opinion); *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934) ("so rooted in the traditions and conscience of our people as to be ranked as fundamental"), **and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed**,"

> *Palko v. Connecticut*, 302 U.S. 319, 325, 326 (1937)… As we stated recently in *Flores*, **the Fourteenth Amendment "forbids the government to infringe … 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest**." [*Reno v. Flores*, 507 U.S. 292, 302 (1993)].

*Glucksberg*, 521 U.S. at 720-721 (emphasis added).

As discussed above, the presumption of innocence is a fundamental right protected by the Constitution. The subject Policy violates the presumption of innocence because the citation is unsworn and unfiled, and ***there is no charge to which to plead guilty, and no entity which can accept before a guilty plea***. Yet again, Intellisafe is a non-governmental, non-judicial, private, for-profit company that has ***no authority under color of law, or otherwise, to accept any guilty plea or to conduct any arraignment***.

When Mallory paid the citation under the circumstances in which he found himself, his payment did ***not*** constitute a ***voluntary*** plea of guilt. The imposition of a fine, and the threat of a late penalty, collections, additional penalties, and loss of hearing rights if the fine is not paid by the arbitrary "due date," prior to either a formal charge being made, or a court hearing, all without even being identified as the driver of the vehicle, cannot be anything other than being "deemed guilty" and deprived of the fundamental right of the presumption of innocence, at the time the citation was placed in the mail by Intellisafe. The subject Policy in this matter should be properly analyzed with strict scrutiny, of which it cannot pass muster.

## III. Whether Mallory has stated a valid equal protection claim.

The equal protection clause "direct[s] that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (superseded by statute).

In *Qutb*, the Fifth Circuit stated:

> Under the Equal Protection analysis, we apply different standards of review depending upon the ***right*** or classification involved. If a classification disadvantages a "suspect class" ***or impinges upon a "fundamental right,"*** the ordinance is subject to ***strict scrutiny***. Under the strict scrutiny standard, we accord the classification ***no presumption of constitutionality***. Instead, we ask whether the classification promotes a ***compelling governmental interest*** and, if so, whether the ordinance is ***narrowly tailored such that there are no less restrictive means available to effectuate the desired end***.

*Qutb v. Strass*, 11 F.3d 488, 492 (5th Cir. 1993) (emphasis added, internal cites and quotations omitted).

There is no requirement that the classification include or involve one of the "protected" or "suspect" classes for there to be distinct groups, as this Court has stated:

> The existence of a discoverable group or classification antedating the challenged state action is a *sine qua non* for proving purposeful discrimination; it cannot tenably be maintained that the state selected a particular course of action to harm an "identifiable group" when that body did not exist until *after* the state acted.

*Johnson v. Rodriguez*, 110 F.3d 299, 304-305 (5th Cir. 1997) (emphasis in original).

Mallory has not, and does not, argue he is a member of a protected class. But, the City's Policy results in the creation of two distinct groups of drivers, those who are afforded proper traffic stops and are properly identified, and those who are not. Moreover, the underlying issue in this matter regarding equal protection involves the violation of the fundamental right of the presumption of innocence which is afforded to drivers who are operating their vehicles in school zones. This fundamental right cannot be infringed upon, ***at all***, no matter the process, unless the process is narrowly tailored to a compelling state interest. Despite the City Defendants', and Intellisafe's exhaustive attempts to transform speeding within the State of Mississippi into civil violations, the purported violators are nevertheless criminal defendants who are charged with misdemeanors. Therefore, the District Court's application of the rational basis test was erroneous, and strict scrutiny must be applied when analyzing the subject Policy.

While it is true that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims[,]" the equal protection claim here only gets us so far.[14] To be clear, there is no circular logic regarding Mallory's

[14] Regarding Plaintiff's assertion of an Equal Protection claim. See *Cnty. of Sacrameto v. Lewis*, 523 U.S. 833, 842, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998); and *Lindquist v. City of Pasadena*, 525 F.3d 383, 387 (5th Cir. 2008).

equal protection claims as they are based on another fundamental right, the presumption of innocence. For instance, let us assume the City of Hattiesburg employed the Policy city wide, instead of only in school zones. The end result may negate Mallory's equal protection claim, as he would be treated the same as everyone else, but the fundamental rights of due process and the presumption of innocence, would remain at issue. Therefore, Mallory's equal protection claims are not just the substantive due process claims restated; they are independent claims which must be considered separately because they are based on the differential treatment of the two separate and distinct groups of drivers created by the Policy. Again, because these claims involve fundamental rights, it is not necessary that the drivers be members of a protected class.

However, even assuming *arguendo* that the rational basis test is proper (which it is not), the Policy cannot even meet that test.[15] The stated legitimate interest is to protect children in school zones. Yet, the protection of children, regardless of where they may be found (school zones or not), is a universal goal. Thus, the real "legitimate state interest" here is protecting children in school zones ***by deterring speeders in those school zones***. But the Policy does not accomplish that goal because no one knows who is driving at the time of the violation and the Policy

[15] So long as the state action does not "burden a fundamental right or target a suspect class, state agencies may pursue legitimate purposes by any means having a conceivable rational relationship to those purposes." *Johnson*, 110 F.3d at 306.

therefore fails its objective by failing to hold the actual violator accountable. For instance, if the owner is not driving, the one speeding is not deterred, nor is he/she receiving the citations. If the license plate is of a nature not to identify the owner, such as a dealer tag or where the license plate is obscured by a trailer, again the one speeding is not deterred. If all that is necessary to have the citation dismissed is to simply contest the citation, without being asked a single question or for a plea, again the violator is not deterred. [16]

But these are only a few of the scenarios that commonly arise and which prove that the Policy is ineffective, even under a rational basis standard. It would appear that the City Defendants and Intellisafe hope and pray that no one questions the citations and simply take the path of least resistance. Conversely, when a driver sees a police-vehicle waiting to catch someone speeding, or when they see an officer is effectuating a traffic stop, they tend to slow down. This is especially true when the blue lights are flashing. The Policy's stated goal, which should be everyone's goal, can be accomplished through alternative means which do not infringe upon the purported violators' constitutional rights.

There could be no clearer error of law and fact than the one committed by the District Court in this circumstance. Indeed, one sentence is all that needs to be read

[16] As mentioned, many are contesting the citation which are being referred to the municipal court, where the citation should have been filed in the first place. These citations are being dismissed by the municipal court *en masse*, without a plea and without a question from the court, as the City Prosecutors cannot identify the driver of the vehicle at the time of the violation.

to understand that the District Court completely "missed the mark" when deciding the Motion to Dismiss.[17]

## IV. Whether Chief Sims and the City Prosecutors are protected by absolute or qualified immunity.

Chief Sims, nor the City Prosecutors, enjoy immunity in this case. They have the "'coercive power' necessary to either cause the injury or ***redress it***." *Campaign v. Miss. Dep't of Human Servs.*, 175 F. Supp. 3d 691, 700-708 (N.D. Miss. 2016) (emphasis added). In discussing the issue of immunity, the *Campaign* court recognized that "[t]he fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists." *Id.* at 708 (quoting *Ex Parte Young*, 209 U.S. 123, 157 (1908)). While the court noted that the nature of this connection is not entirely clear, *Okpalobi* required a "close connection" or "special relation" and the Fifth Circuit later noted that "'[e]nforcement' typically involves **compulsion or constraint**." *Id.*

[17] The District Court found that "[i]t is ***instinctively obvious*** that issuing citations for speeding in a school zone, ***regardless of the method of doing so***, is to protect school children's safety." ROA.257. In other words, the District Court's order would allow such a scheme which commits fraud, extortion, and violate citizens' constitutional rights, so long as the scheme is carried out ***in a school zone***. This could not have been a clearer error of the application the facts of this case, as well as the law in the State of Mississippi. In reality, the scheme complained of herein is not effective at protecting children in school zones as many times the person receiving the ticket ***was not even driving***. Yet, the District Court believes it is *instinctively obvious* that the scheme is effective and "protects school children's safety," even when the fines are not being levied against the individuals actually responsible for the speeding violations. Again, the District Court's reasoning is critically flawed and fails to address the reality of how the scheme actually operates.

(quoting *Okpalobi v. Foster*, 244 F.3d 405, 413 (5th Cir. 2001) and *K.P. v. LeBlanc*, 627 F.3d 115, 124-125 (5th Cir. 2010) (emphs. added)).

In *Lefebure*, the Fifth Circuit recognized that "a dividing line exists between failure-to-protect and failure-to-prosecute claims – that is, claims alleging a failure to protect *before* harm occurs (ex-ante) and a failure to prosecute *after* the fact (ex-post). A plaintiff has standing to pursue the former, but not the latter. *Lefebure v. D'Aquilla*, 15 F.4th 650, 661 (5th Cir. 2021) (emphasis in original, internal citations omitted). This applies to the City Prosecutors as well, as they are a part of law enforcement. *Id.* at 666.

Chief Sims and the City Prosecutors are ***all*** a part of the City's law enforcement mechanism and owe duties to those within the City's boundaries. Here, however, the moto "*To Protect and Serve*," has been lost. Mallory's allegations against the City Defendants, is that each of them had knowledge of, or played a role in either the promulgation, enactment, and/or enforcement of the Policy at issue in this matter; ***or*** have acquiesced in the Policy's unconstitutional actions, and violations against Mallory and others, by not ***redressing*** the problem, and by failing to protect against the Policy's unconstitutional results.

These actions, and/or inactions, do not fall within the City Prosecutors' "conduct [which] is 'intimately associated with the judicial phase of the criminal process[,]'" and therefore are not afforded absolute immunity. *Loupe v. O'Bannon*,

824 F.3d 534, 538-539 (5th Cir. 2016) (internal citations and quotations omitted). Instead, the City Prosecutors are only afforded qualified immunity when their conduct involves "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Id.* This qualified immunity only protects the City Prosecutors from conduct that "does not violate clearly established or constitutional rights of which a reasonable person would have known. A right is clearly established if it is sufficiently clear that 'every reasonable officer' would have understood that what he or she is doing violates that right." *Turner v. Oliver*, 2023 U.S. Dist. LEXIS 60520, *13-14 (S.D. Miss. March 10, 2023). While there are many constitutional violations here, it is clear that any reasonable officer should know that proceeding on unsworn and unfiled affidavits is a violation of constitutional rights, on its face.

For the reasons stated above, Mallory's constitutional violation claims are valid. As such, the claims against the City Defendants are viable, and the District Court's erred in dismissing Mallory's claims.

## CONCLUSION

For the reasons stated above, Mallory has alleged valid due process and equal protection claims against the City Defendants and Intellisafe. These claims were erroneously dismissed by the District Court, and this dismissal should be reversed. Because Mallory's due process and equal protection claims are valid, the District

Court's dismissal of Mallory's other constitutional claims was also erroneous and should be reversed. Neither Chief Sims, nor the City Prosecutors, enjoy immunity, absolute or qualified, and the District Court dismissal of the claims against them should be reversed.

Respectfully submitted,

*s/Richard Joseph Lajaunie*
RICHARD J. LAJAUNIE
Attorney of record for Appellant Gerry Mallory

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which provides notice of same to all counsel of record registered with the CM/ECF system.

This the 14th day of April, 2026.

*s/Richard Joseph Lajaunie*
RICHARD J. LAJAUNIE
Attorney of record for Appellant
Gerry Mallory

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements.

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f). it contains 11,107 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in Times New roman typeface with a 14 point font in the main text, except footnotes which are in 12 point Times New Roman.

This the 14th day of April, 2026.

*s/Richard Joseph Lajaunie*
RICHARD J. LAJAUNIE
Attorney of record for Appellant Gerry Mallory